# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ENDURANCE AMERICAN
SPECIALTY INSURANCE COMPANY,

        Plaintiff,

v.                                  Case No:  6:15-cv-1906-Orl-31DCI

JOY GROCERY, INC., ESTATE OF
NICHOLAS ALLIGOOD, EDUAR
MARTINEZ, SEAN F. BOGLE,
FOYSAL AHMED, JAMAL UDDIN and
AMBAMA, INC.,

        Defendants.

_____

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration on the following motions:

| | |
|---|---|
| **MOTION:** | **MOTION FOR SUMMARY JUDGMENT (Doc. 81)** |
| **FILED:** | **September 27, 2017** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |

| | |
|---|---|
| **MOTION:** | **RENEWED MOTION FOR DEFAULT JUDGMENT (Doc. 90)** |
| **FILED:** | **December 5, 2017** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |

## Introduction

Before the Court are Plaintiff's motion for summary and motion for default judgment. Docs. 81; 90. Between the two motions, Plaintiff seeks unopposed declaratory relief against all Defendants – the Defendants who have appeared (i.e., The Estate of Nicholas Alligood, as represented by Sean F. Bogle as the personal representative of the Estate of Nicholas Alligood (the Estate), Eduar Martinez, and Ambama, Inc.) have not contested summary judgment, and the remaining Defendants (i.e., Joy Grocery, Inc, Foysal Ahmed, and Jamal Uddin) have defaulted. Thus, for the reasons set forth in this Report, the undersigned respectfully recommends that the Court enter judgment against all Defendants and in favor of Plaintiff, granting declaratory relief to Plaintiff as set forth in this Report.

## Procedural Background

On November 10, 2015, Plaintiff brought a one-count complaint seeking declaratory judgment against Defendants. Doc. 1. In sum, Plaintiff seeks a judgment declaring, in part, that it has no obligation to indemnify or defend Joy Grocery under an insurance policy (the Policy)[1] in relation to an incident that occurred on November 20, 2014. *See* Docs. 1; 38. On that date, an accident occurred at Joy Grocery in which Eduar Martinez, an employee of Joy Grocery, allegedly negligently discharged a firearm and killed Nicholas Alligood. Immediately after the shooting, Joy Grocery obtained from Plaintiff the Policy to insure the premises of Joy Grocery where the shooting occurred. The Policy, on its face, was effective as of November 20, 2014. Five months later, Plaintiff learned of the November 20, 2014 shooting, and the Estate brought a state court

---

[1] The Policy is the Commercial General Liability Insurance Policy, bearing Policy Number CBC20000163200 issued by Plaintiff to Joy Grocery that provided certain coverage for the business premises of Joy Grocery located at 5045 US Highway 17, DeLeon Springs, Florida 32130. *See* Doc. 38 at 4.

action in Volusia County, Florida related to the shooting against Eduar Martinez, Foysal Ahmed, Jamal Uddin,[2] Joy Grocery, and Ambama, Inc.  It is Plaintiff's position in this action – and Plaintiff seeks a declaration that – the Policy is void from its inception and that Plaintiff has no further obligation under the Policy or related to the November 20, 2014 shooting.

On April 14, 2016, Plaintiff filed a return of service as to Joy Grocery.  Doc. 16.  Plaintiff then sought and obtained a Clerk's default as to Joy Grocery (Doc. 19), but that Clerk's default was vacated after Plaintiff moved for default judgment against Joy Grocery, and the Court denied that motion (Docs. 26; 27; 28).  In denying Plaintiff's motion for default judgment against Joy Grocery, the Court noted that the motion failed to comply with Local Rule 3.01(a), and also called into question Plaintiff's service of process as to Joy Grocery.  Doc. 27 at 2-3.

On September 19, 2016, Plaintiff filed another return of service as to Joy Grocery (Doc. 30) and, upon filing a motion for entry of Clerk's default (Doc. 32), the Clerk entered default as to Joy Grocery (Doc. 33).

On December 20, 2016, Plaintiff filed a one-count Amended Complaint seeking the same declaratory judgment that it has no obligation to indemnify or defend Joy Grocery in relation to an incident that occurred on November 20, 2014.  Doc. 38.  The primary difference between the two pleadings is that through the Amended Complaint Plaintiff added Eduar Martinez, Jamal Uddin, Foysal Ahmed, and Ambama, Inc. as Defendants.  *Compare* Doc. 1 *with* Doc. 38.  In the Amended Complaint, Plaintiff requested the following relief, which is essentially identical to the relief requested in the Complaint:

   a) Declaring the Policy void from the inception due to the fact that the shooting incident and loss was known to JOY GROCERY prior to its request for issuance of the ENDURANCE Policy and the payment of premiums;

---

[2] Jamal Uddin is the owner of Joy Grocery and Foysal Ahmed is its registered agent.  *See* Docs. 38; 90.

b) Declaring there is no coverage under the ENDURANCE Policy in accordance with the terms of the Insuring Agreement since JOY GROCERY was aware of the shooting incident and loss prior to its request for issuance of the ENDURANCE Policy;

c) Declaring JOY GROCERY is in breach of the Policy terms and conditions in that it did not provide ENDURANCE with notice of the accident for over five months after it was aware of the accident;

d) Declaring that as a result of the breach of the Policy terms and conditions there is no coverage under the ENDURANCE Policy for any liability which may be assessed against JOY GROCERY in the Underlying Action, arising from the shooting incident at the Insured Premises on November 20, 2014, in a future action;

e) Declaring ENDURANCE has no duty defend and/or indemnify JOY GROCERY for any claims asserted in the Underlying Action arising from the shooting incident of November 20, 2014, in a future action;

f) Declaring the Defendants are estopped from pursuing a claim, defense and/or indemnity against ENDURANCE for any claims in the Underlying Action arising from the shooting incident of November 20, 2014.

Doc. 38 at 13-14. Plaintiff also attached to the Amended Complaint the state court complaint in the underlying negligence claim related to November 20, 2014 shooting death of Nicholas Alligood (Doc. 38 at 15-26), Policy (Doc. 38 at 27-81), and a fax cover sheet dated November 20, 2014 requesting that the insurance underwriter bind the Policy "as of 12:01 AM 11/20/14" (Doc. 38 at 82). The Estate answered the Amended Complaint (Doc. 49), as did Ambama, Inc. (Doc. 51) and Eduar Martinez (Doc. 60).

Initially, the summons issued in relation to the Amended Complaint as to Jamal Uddin and Foysal Ahmed were returned as unexecuted. Docs. 56; 66. However, in July 2017, Plaintiff was finally able to secure service in relation to those Defendants, and filed returns of service in August 2017. Docs. 73; 74.

On August 21 and 22, 2017, Plaintiff moved for entry of Clerk's default against Jamal Uddin and Foysal Ahmed (Docs. 76; 78), and the Clerk entered default against those Defendants (Docs. 77; 79). The next day, Plaintiff moved for default judgment against Joy Grocery, Jamal Uddin, and Foysal Ahmed. Doc. 80.

On September 27, 2017, Plaintiff moved for summary judgment against the remaining Defendants that appeared in this action. Doc. 81. The Court immediately ordered Plaintiff to show cause why the motion for summary judgment should not be stricken as untimely – the Case Management and Scheduling Order set the deadline for dispositive motions as August 15, 2017. Doc. 82. In response, Plaintiff asserted that it had "lost track of the Court's deadline" and had ongoing difficulty effectuating service on Jamal Uddin and Foysal Ahmed. Doc. 83. Plaintiff also asserted that considering the motion for summary judgment on its merits would "result in no prejudice to any parties as counsel for the remaining Defendants in this case have long been advised of the basis of Plaintiff's Motion for Summary Judgment and have represented that they do not intend to file opposition to Plaintiff's Motion for Summary Judgment. It is fully expected that the Motion for Summary Judgment will resolve the case in its entirety, without the need for any additional hearings or proceedings." *Id*. at 3. The Court has decided to consider the motion for summary judgment on its merits (*see* Doc. 84) and, indeed, the Defendants that have appeared in this action filed no response in opposition to the motion for summary judgment, and it stands as unopposed.

On November 21, 2017, the Court entered an order denying the motion for default judgment, again noting that the motion failed to comply with Local Rule 3.01(a) and also calling into question Plaintiff's service of process as to Joy Grocery. Doc. 87.

On December 5, 2017, Plaintiff filed a second motion for default judgment against Joy Grocery, Jamal Uddin, and Foysal Ahmed. Doc. 90. Shortly thereafter, the Court set the motion for hearing and, in a supplemental order, called into question once again Plaintiff's service of process as to Joy Grocery. Doc. 92. Thereafter, Plaintiff filed a supplemental memorandum of law and an affidavit in support of its service of process as to Joy Grocery. Doc. 92. Following a hearing, Plaintiff filed a supplemental affidavit addressing the citizenship for diversity purposes of the Estate and Ambama, Inc. Docs. 95; 96.

**THE MOTIONS**

**A. Subject Matter Jurisdiction.**

Plaintiff alleged that the Court has diversity jurisdiction over this matter because the parties are completely diverse and the amount-in-controversy exceeds $75,000.00. *See* Doc. 38 at 3. Plaintiff is a New York corporation with its principal place of business in New York. *Id.* at 2. Defendants Joy Grocery and Ambama, Inc. are Florida corporations with their principal places of business in Florida. *Id.*; Doc. 95. At the time of filing, Defendants Jamal Uddin and Foysal Ahmed were citizens of the state of Florida. Doc. 38 at 3. Nicholas Alligood, the decedent whose estate is represented by Sean Bogle, as personal representative of the Estate of Nicholas Alligood, was a citizen of the State of Florida. Doc. 6.

**B. Personal Jurisdiction.**

The Court has personal jurisdiction over Defendants because the events giving rise to this action occurred in the state of Florida, and Defendants are citizens of, or have their principal places of business within, Florida. *See* Docs. 38 at 2-3; 95; 96.

### C. Service of Process

Plaintiffs properly served Defendants.  As to the defaulted defendants, Jamal Uddin was served with the Amended Complaint by substitute service upon his spouse and cohabitant.  Doc. 73.  Foysal Ahmed was also served by substitute service upon his spouse and co-habitant.  Doc. 74.  Service of the Complaint upon Joy Grocery was proper because Plaintiffs complied with Federal Rule of Civil Procedure 4(h)(1)(A) and Florida Statutes sections 48.081(3)(b) and 48.031(1)(a) & (2)(a).  *See* Docs. 30; 93.  In particular, Plaintiff's served Joy Grocery's registered agent via substitute service upon the registered agent's spouse and co-habitant, which was proper because Joy Grocery listed a residential address for its registered agent. *See id.*; s*ee also Destefano v. Dohi, Inc.*, No. 6:16-cv-752-ORL-37TBS, 2016 WL 7971298, at *2 (M.D. Fla. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4432372 (M.D. Fla. Aug. 22, 2016).

But the undersigned notes that Joy Grocery was not served with the Amended Complaint. Federal Rule of Civil Procedure 5(a)(2) provides as follows: "No service is required on a party who is in default for failing to appear.  But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."  Fed. R. Civ. P. 5(a)(2).  The purpose of Rule 5(a)(2) is to ensure that "a party, having been served, is able [to] make an informed decision not to answer a complaint without fearing additional exposure to liability for claims raised only in subsequent complaints that are never served."  *See, e.g.*, *Blair v. City of Worcester*, 522 F.3d 105, 109 (1st Cir. 2008); *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, 2014 WL 6810663, at *3 (S.D. Cal. Dec. 2, 2014).  "While adding new claims require[s] service under Rule 4, the addition of new factual allegations do[es] not."  *Wahoo Int'l*, 2014 WL 6810663, at *3 (citing *JBR, Inc. v. Cafe Don Paco, Inc.*, 2014 WL 5034292, at *1 (N.D. Cal. Sept. 30, 2014) ("the plain language of Rule 5(a)(2) compels the conclusion that the addition of new factual allegations in an amended

complaint, without the addition of a new claim, does not require service of the amended pleading on a party in default for failure to appear.")); *see also Poitevint v. Dynamic Recovery Servs., Inc.*, 2011 WL 201493, *1 (M.D. Fla. Jan. 20, 2011) ("But, '[w]here changes made in an amended complaint are not substantial, the requirement of [Rule 5(a)(2)] that a pleading that states a new claim for relief against a party in default must be served on that party is not applicable.'") (citations omitted) (alterations in original).

Here, the undersigned finds that the Amended Complaint is not substantially different from the Complaint. The Amended Complaint primarily added Jamal Uddin, Foysal Ahmed, and Ambama, Inc. as parties, but retained the same single cause of action and the same request for relief. *Compare* Doc. 1 *with* Doc. 38. Accordingly, the undersigned finds that Plaintiff was not required to serve Joy Grocery with the Amended Complaint, Joy Grocery may be held liable under the Amended Complaint, and the Amended Complaint should be used to determine the sufficiency of the allegations against Joy Grocery.

As to the Defendants at issue in the motion for summary judgment, the undersigned notes that the Estate and Ambama, Inc. were properly served (Docs. 46; 47; 48) and filed an answer to the Amended Complaint (Docs. 49; 51). While the return of service as to Ambama, Inc. was not signed, Ambama, Inc.'s appearance in this case and answer to the Complaint provides sufficient evidence that service was accomplished in this case. As to Eduar Martinez, who is proceeding pro se, although there is no evidence in the record that he was properly served, he has appeared in this case, filed motions and other documents appropriately (Docs. 57; 61), and filed an answer to the Amended Complaint (Doc. 60). In Eduar Martinez's motion for an extension of time to respond to the Amended Complaint, he requested "an additional fifteen (15) days to respond to the very extensive and complicated Complaint served on me." Doc. 57. Thus, looking to the evidence of

record, it appears that there is sufficient evidence that service was accomplished in this case as to Eduar Martinez.

THE MOTION FOR DEFAULT JUDGMENT

A.  Standard of Review – Default Judgment

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.  First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.  Fed. R. Civ. P. 55(a).  Second, after obtaining clerk's default, the plaintiff must move for default judgment.  Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to

---

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment. If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in their motion for default judgment.

### B. Discussion

In the Amended Complaint, Plaintiff alleges a cause of action for declaratory relief under both federal and Florida law. Doc. 38 at 2 ("This action for Declaratory Judgment is brought pursuant to 28 U.S.C. § 2201 et seq. . . . .") and 8 ("This is an action seeking declaratory relief pursuant to Section 86, Florida Statutes . . . ."); *see also* 28 U.S.C. § 2201; Fla. Stat. § 86.011. Regardless of whether the Court applies federal or Florida law, to be entitled to a declaratory judgment, Plaintiff must establish that there is a justiciable controversy under the Constitution, which in this case requires there to be an "actual controversy" within the meaning of the federal Declaratory Judgment Act. *See Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, No. 3:13-cv-457-J-34PDB, 2014 WL 4626597, at *2-3 (M.D. Fla. Sept. 16, 2014) (stating that questions of justiciability are governed by federal law, and finding that cases interpreting the Declaratory Judgment Act's "actual controversy" requirement are instructive in determining whether a declaratory judgment action presents a "case or controversy" within the Court's judicial power to decide because the standard for an "actual controversy" under the Declaratory Judgment Act is the same as the standard for a "case or controversy" under the Constitution) (citations omitted); *see also Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981) ("The statutory standard for determining whether an 'actual controversy' exists within the meaning of the Declaratory

Judgment Act is the same as that under the 'case or controversy' requirement of the Constitution.") (citations omitted).

Based on the allegations within the Amended Complaint, Florida law governs the resolution of this declaratory action. *See* Doc. 38. In Florida, an insurer's duty to indemnify is determined by analyzing the policy coverage in light of the actual facts of the underlying case. *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F. Supp. 2d 1248, 1258 (M.D. Fla. 2002) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n.7 (Fla. 1998)).[4]

In Florida, "[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007). Thus, "[i]f the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Travelers Indem. Co. v. PCR, Inc.*, 889 So.2d 779, 785 (Fla. 2004). In general, coverage provisions in insurance policies are interpreted in the broadest possible manner to effect the greatest amount of coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th DCA 1997). In contrast, exclusionary provisions "are typically read strictly and in a manner that affords the insured the broadest possible coverage." *Mid-Continent Cas. Co. v. Frank Casserino Const., Inc.*, 721 F. Supp. 2d 1209, 1214 (M.D. Fla. 2010) (citing *Indian Harbor Ins. Co. v. Williams*, 998 So.2d

---

[4] The Court, in cases such as this, looks "first for case precedent from the Florida Supreme Court." *Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 864 (11th Cir. 2014) (internal quotations omitted). The Court, in the absence of such precedence, adheres "to decisions of [Florida's] intermediate appellate courts" unless a persuasive indication exists that the Florida Supreme Court "would decide the issue otherwise." *Id.* The Court may also "consider the case law of other jurisdictions that have examined similar policy provisions" if there are no "precedents from Florida's intermediate appellate courts" or the Florida Supreme Court. *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005).

677, 678 (Fla. 4th DCA 2009)).  The insured bears the burden of proving that a claim is covered by the insurance policy, while the insurer bears the burden of proving that an exclusion applies. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997).

Here, the well-plead allegations in the Amended Complaint are as follows (paragraph citations are to the Amended Complaint (Doc. 38):  On November 20, 2014, the decedent, Nicholas Alligood, was an "invitee" on the premises of Joy Grocery, when he was shot by Eduar Martinez, who was an employee of Joy Grocery.  ¶ 17.  Nicholas Alligood died as a result of that gunshot wound, and Sean Bogle is the personal representative of the Estate of Nicholas Alligood.  ¶¶ 7, 17-18.

Currently, there is pending a negligence lawsuit in Volusia County, Florida circuit court, whereby Sean Bogle, as the personal representative of the Estate of Nicholas Alligood, has brought a negligence lawsuit against Eduar Martinez, Foysal Ahmed, Jamal Uddin, Joy Grocery, and Ambama, Inc[5] relating to the November 20, 2014 shooting and the death of Nicholas Alligood.  ¶ 14; Attachment A to the Amended Complaint (the underlying state court complaint).  Joy Grocery has sought coverage from Plaintiff for the November 20, 2014 shooting incident in relation to the underlying state court action pursuant to the Policy, and the policy limits at issue are $1 million per incident and $2 million in the aggregate.  ¶ 15; Attachment B to the Amended Complaint (the Policy).

Prior to November 20, 2014, Joy Grocery was insured under an insurance policy issued by Lloyd's of London, effective from November 5, 2013 through November 5, 2014.  ¶ 20.  Once the Lloyd's policy lapsed, Joy Grocery attempted to obtain new insurance through its agent, Shores Insurance, Inc. (Shores).  ¶ 21.  Shores provided Joy Grocery with a quote from Plaintiff for the

---

[5] Ambama, Inc. leased the business premises to Joy Grocery.  ¶ 16.

Policy.  ¶ 21.  In response, Joy Grocery told Shores that it could not afford the premium for the Policy, and Shores told Joy Grocery that, unless the premium was paid, Shores could not bind the Policy with Plaintiff.  ¶ 22.  Thus, the Policy was not in effect or bound.  ¶ 23.

On November 20, 2014, at about 10:00 a.m., Nicholas Alligood was shot on the premises of Joy Grocery – the same premises that was the subject of the insurance quote discussed in the foregoing paragraph.  ¶ 24.  Within an hour of the shooting incident, Joy Grocery's owner, Jamal Uddin, was aware of the shooting.  ¶ 24.  In fact, Jamal Uddin was called immediately after the shooting by Eduar Martinez (the shooter), and arrived at the premises of Joy Grocery as Nicholas Alligood was being placed in an ambulance at about 10:15 a.m.  ¶ 25.

Still on November 20, 2014, but after the shooting, Joy Grocery, via Jamal Uddin, told Shores that Joy Grocery would pay the insurance premium for the Policy with Plaintiff, and requested that the Policy be effective immediately.  ¶ 26.  Thus, on November 20, 2014 at 5:37 p.m., Shores requested that Bass Underwriting, Inc. (the wholesale insurance broker) bind the Policy.  ¶ 27; Attachment C to the Amended Complaint (correspondence between Shores and Bass Underwriting, Inc.).  Because the request to bind the Policy was sent on November 20, 2014, the Policy was effective as of 12:01 a.m. on November 20, 2014.  ¶ 28.  At the time of the request to bind the Policy and at the time the premium was paid, Plaintiff was not aware of the shooting incident that had already occurred at Joy Grocery, i.e. the insured premises.  ¶ 29.  But Joy Grocery and its owner Jamal Uddin were aware of the shooting at the insured premises both before their request to bind the Policy and before the insurance premium was paid by Joy Grocery.  ¶ 30.

On May 5, 2015, Plaintiff learned for the first time about the shooting – and a potential claim on the Policy – from counsel for the Estate, who wrote to Plaintiff and provided an estimate of the damages sustained as a result of Nicholas Alligood's death.  ¶ 31.  Following the notice of

the potential claim, Plaintiff provided Joy Grocery with a reservation of rights latter, whereby Plaintiff advised Joy Grocery of certain provisions of the Policy that would preclude coverage in relation to the November 20, 2014 shooting incident. ¶ 32.

Plaintiff further alleges that there is no coverage afforded under the Policy for the allegations and damages asserted against Joy Grocery, including its owners, agents, and representatives, in the underlying state court action related to the November 20, 2014 shooting and the death of Nicholas Alligood. ¶¶ 35, 36. Indeed, based on the terms of the Policy and the allegations in the Amended Complaint, Joy Grocery knew that an "occurrence" involving "bodily injury" had taken place prior to Joy Grocery's request to bind the Policy and payment of the premium, and Joy Grocery was attempting to gain insurance coverage after knowledge that a loss had occurred. ¶¶ 37, 38. As pled in the Amended Complaint:

> Because JOY GROCERY attempted to obtain insurance coverage from ENDURANCE *after* it knew of the occurrence of the loss and nevertheless paid the premium and requested the Policy be issued immediately, it should be determined that the Policy was void at its inception as there was no fortuitous loss. Accordingly, there is no coverage under the Policy for any clams that may be assessed against JOY GROCERY as a result of the shooting incident occurring on November 20, 2014, resulting in the death of ALLIGOOD.

¶41 (emphasis in original); *see also* ¶42. In addition, and alternatively, Plaintiff alleges that Joy Grocery failed to comply with the notice provisions of the Policy by waiting over five months to inform Plaintiff of the potential claim and, on that basis, the Court should find that no coverage exits in relation to the November 20, 2014 shooting incident. ¶¶ 43-52.

In looking to the well-pled allegations within the Amended Complaint, the undersigned finds that Joy Grocery attempted to enter into an insurance contract with Plaintiff to insure a known, non-fortuitous loss. As such, the Policy was void ab initio. The Eleventh Circuit recently addressed this issue and, in doing so, examined Florida law on this topic. *See I.T.N. Consolidators,*

*Inc. v. N. Marine Underwriters Ltd.*, 699 F. App'x 880 (11th Cir. 2017). In *I.T.N. Consolidators*, the Circuit explained, as a part of its analysis, that "agreements to insure a known loss are void as a matter of public policy in Florida." 699 F. App'x at 885 (discussing *Interstate Fire & Cas. Co. v. Abernathy*, 93 So.3d 352 (Fla. 1st Dist. Ct. App. 2012) and *National Life Ins. Co. v. Harriott*, 268 So.2d 397, 400 (Fla. 2d Dist. Ct. App. 1972)). The Court in *I.T.N. Consolidators* addressed the issue of whether a policy could be valid if the insurer *also* knew of an existing loss, but in doing so addressed also confirmed that the law in Florida is well-established that if the insurer is unaware of a known loss, the contract of insurance is void as a matter of public policy, and there is no coverage for the known loss. *Id*. As such, based upon Florida law and the well-pled allegations in the Amended Complaint, the undersigned respectfully recommends that the Court grant default judgment against Joy Grocery, Jamal Uddin, and Foysal Ahmed and in favor of Plaintiff.

## THE MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review – Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact,

genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve any reasonable doubts in the non-moving party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

Because the movant bears the initial burden of proving that summary judgment is appropriate, a court cannot "base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1101-02 (11th Cir.2004) (citing *Dunlap v. Transam. Occidental Life Ins. Co.,* 858 F.2d 629, 632 (11th Cir.1988)). "The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.*

### B. Discussion

Here, in support of its motion for summary judgment, Plaintiff submitted to the Court: a) the Amended Complaint and its attachments, which include the complaint in the underlying state court action, the Policy, and the correspondence relating to the binding of the Policy (Doc. 81-1 at

1-83); b) the complaint in the underlying state court action (Doc. 81-1 at 84-96); c) the Policy (Doc. 81-2 at 1-56); d) the affidavit of Brendan Creighton (Doc. 81-2 at 57-66); e) the police report from the November 20, 2014 shooting incident (Doc. 81-2 at 67-74); f) the General Liability Binder for the Policy (Doc. 81-2 at 75-79); g) the May 2015 letter from counsel for the Estate related to the November 20, 2014 shooting (Doc. 81-2 at 80-81); h) Plaintiff's Reservation of Rights letter to Joy Grocery (Doc. 81-2 at 82-88). That evidence, and particularly the affidavit of Brendan Creighton, supports the well-pled allegations in the Amended Complaint already discussed in the foregoing section of this Report, and provides undisputed material evidence weighing in favor of summary judgment.[6]

Specifically, Brendan Creighton, a Senior Claims Specialist with Plaintiff testified as follows (paragraph citations are to the Mr. Creighton's affidavit (Doc. 81-2 at 58-66)): Prior to November 20, 2014, Joy Grocery was insured under an insurance policy issued by Lloyd's of London, effective from November 5, 2013 through November 5, 2014. ¶ 5. Once the Lloyd's policy lapsed, Joy Grocery's insurance agent, Shores, provided Joy Grocery with a quote from Plaintiff for a commercial general liability insurance policy. ¶ 6. In response, Joy Grocery told Shores that it could not afford the premium for Plaintiff's proposed policy, and Shores told Joy Grocery that, unless the premium was paid, Shores could not bind the policy with Plaintiff. ¶ 7. Thus, the policy was not in effect or bound. ¶ 7.

On November 20, 2014, at about 10:00 a.m., Nicholas Alligood was shot on the premises of Joy Grocery – the same premises that was the subject of the insurance quote discussed in the foregoing paragraph. ¶ 8. Plaintiff obtained a recorded statement of Joy Grocery's owner, Jamal

_____

[6] As previously discussed, Defendants did not file a response to Plaintiff's motion for summary judgment.

Uddin, concerning the shooting. ¶ 9. According to that recorded statement, Jamal Uddin was called immediately after the shooting by Joy Grocery employee Eduar Martinez (the shooter), who stated that he accidentally shot someone at Joy Grocery. ¶ 10. Jamal Uddin said that he arrived at the premises of Joy Grocery shortly after receiving the call, on the morning of the shooting. ¶ 10.

Still on November 20, 2014, but after the shooting, Joy Grocery told Shores that Joy Grocery would pay the insurance premium for the policy with Plaintiff, and requested that the policy be effective immediately. ¶ 11. Thus, on November 20, 2014 at 5:37 p.m., Shores requested that Bass Underwriting, Inc. (the wholesale insurance broker) bind the Policy. ¶ 12; Attachment C to the Amended Complaint (correspondence between Shores and Bass Underwriting, Inc.). Because the request to bind the Policy was sent on November 20, 2014, the Policy was effective as of 12:01 a.m. on November 20, 2014. ¶ 13. At the time of the request to bind the Policy and at the time the premium was paid, Plaintiff was not aware of the shooting incident that had already occurred at Joy Grocery, i.e. the insured premises. ¶¶ 15, 16.

On May 5, 2015, Plaintiff learned for the first time about the shooting – and a potential claim on the Policy – from counsel for the Estate, who wrote to Plaintiff concerning the shooting incident that led to Nicholas Alligood's death. ¶ 14. Following the notice of the potential claim, Plaintiff provided Joy Grocery with a reservation of rights latter, whereby Plaintiff advised Joy Grocery of certain provisions of the Policy that would preclude coverage in relation to the November 20, 2014 shooting incident. ¶ 19.

Looking to the evidence before the Court and the merits of the claim, and noting also that there is no opposition by any party to the motion for summary judgment, the undersigned finds that the undisputed material facts establish that Joy Grocery attempted to enter into an insurance

contract with Plaintiff to insure a known, non-fortuitous loss. *See also* Fed. R. Civ. P. 56(e); Doc. 84. As such, the Policy was void ab initio. As already discussed, the Eleventh Circuit recently addressed this issue and, in doing so, examined Florida law on this topic. *See I.T.N. Consolidators*, 699 F. App'x at 885. In *I.T.N. Consolidators*, the Circuit explained, as a part of its analysis, that "agreements to insure a known loss are void as a matter of public policy in Florida. *Id*. (discussing *Interstate Fire & Cas. Co. v. Abernathy*, 93 So.3d 352 (Fla. 1st Dist. Ct. App. 2012) and *National Life Ins. Co. v. Harriott*, 268 So.2d 397, 400 (Fla. 2d Dist. Ct. App. 1972)). The Court in *I.T.N. Consolidators* addressed the issue of whether a policy could be valid if the insurer *also* knew of an existing loss, but in doing so addressed also confirmed that the law in Florida is well-established that if the insurer is unaware of a known loss, the contract of insurance is void as a matter of public policy, and there is no coverage for the known loss. *Id*. As such, based upon Florida law and the undisputed evidence before the Court, the undersigned respectfully recommends that the Court grant summary judgment against the Estate, Eduar Martinez, and Ambama, Inc., and in favor of Plaintiff.

Because the undersigned finds that the Policy was void from its inception, and that Plaintiff has no obligation to Joy Grocery under the Policy, it is respectfully suggested that the Court need not consider Plaintiff's additional and alternative basis for relief: that Joy Grocery's delay in reporting the shooting resulted in a breach of the Policy and that, as such, Plaintiff is relieved from its obligations under the Policy. That said, if the Court rejects this Report and Recommendation (or otherwise would like the undersigned to address Plaintiff's alternative basis for relief), the undersigned respectfully requests that the Court return this matter to the undersigned with instructions to issue a report and recommendation as to Plaintiff's alternative basis for relief, which would allow the undersigned promptly to issue a recommendation as to that issue. *See* Fed. R.

Civ. P. 72(b)(3). Thus, the undersigned will not recommend that the Court grant the additional declaratory relief requested by Defendant related to Joy Grocery's delay in reporting the shooting to Plaintiff.

Further, the undersigned will not recommend that the Court grant the additional declaratory relief sought by Plaintiff that relates to potential future actions related to the Policy. First, the undersigned believes that the recommended declaratory judgment will resolve the justiciable issue before the Court in its entirety. Second, the undersigned believes that the requested declaratory relief related to future, conjectural lawsuits does not provide a sufficient basis for this Court to grant the relief requested at this time. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. . . . There must be a substantial likelihood that the plaintiff will suffer future injury: a "perhaps" or "maybe" chance is not enough").

### CONCLUSION

Accordingly, upon due consideration, the undersigned respectfully **RECOMMENDS** that:

1. The second motion for default judgment (Doc. 90) be **GRANTED in part** as set forth in paragraph (3) below, and **DENIED** in all other respects;

2. The motion for summary judgment (Doc. 81) be **GRANTED in part** as set forth in paragraph (3) below, and **DENIED** in all other respects;

3. The Court enter a declaratory judgment against all Defendants and in favor of Plaintiff, as follows:

    a. The Commercial General Liability Insurance Policy, bearing Policy Number CBC20000163200 issued by Plaintiff to Joy Grocery that provided certain coverage for the business premises of Joy Grocery located at 5045 US Highway 17, DeLeon Springs, Florida 32130 (the

Policy) was void from its inception with regard to the shooting incident of November 20, 2014 due to the fact that the shooting incident and loss was known to Joy Grocery prior to its request for issuance of the Policy and the payment of premiums;

b. There is no coverage for the shooting incident of November 20, 2014 under the Policy since Joy Grocery was aware of the shooting incident and loss prior to its request for issuance of the Policy; and

c. Plaintiff has no duty to defend or indemnify Joy Grocery for any claims arising from the shooting incident of November 20, 2014 (*Sean F. Bogle, Esquire, As Personal Representative of the Estate of Nicholas Alligood v. Eduar Martinez, et al.*, Case No. 2016 11645 CIDL (in the Circuit Court of the Seventh Judicial Circuit, in and for Volusia County, Florida)

4. The Clerk be directed to close the case.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 15, 2017.

_____
DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy